*Hartford,*
August, 1850.

Southington
Ecclesiastical
Society
*v.*
Gridley.

SOUTHINGTON ECCLESIASTICAL SOCIETY *against* GRIDLEY.

Where the plaintiffs in an action of trespass *qu. cl. fr.* against *B*, claiming title to a larger tract of land, which included the *locus in quo,* offered in evidence the record of a judgment in their favour, against *C*, in an action of ejectment for such larger tract, for the purpose of showing an act of ownership by the plaintiffs in relation to the *locus in quo ;* it was held, that such judgment being between different parties, and in relation to a different subject matter, was inadmissible.

Where the defendant, in such action, claimed title, by himself and under the *Episcopal* society, by virtue of an adverse possession since the year 1790; the plaintiffs claimed, that the possession of the *Episcopal* society was under a licence from them, the plaintiffs; and to prove this, they offered the testimony of an aged member of the *Episcopal* society, " That that society, supposing that they held a lease of the ground on which the house stood, and six feet around it, from the *Congregational* society, [plaintiffs,] I suppose that the [*Episcopal*] society instructed their committee to make search for the lease. The committee came into a society meeting, and reported, they could not find the lease :" it was held, that such testimony was inadmissible.

The report of a committee of an ecclesiastical society, not acted upon by the society, is not evidence against the society ; and if acted upon, it could not be shown, by parol testimony.

THIS was an action of trespass *quare clausum fregit;* tried at *Hartford,* on the general issue, *September* term, 1849.

On the trial, the plaintiffs claimed title, by a non-existing grant, the original existence of which they claimed to have shown, by a variety of facts and circumstances, in connexion with a long possession by them. They also claimed, that the *locus in quo* was a part of a larger tract of land, embraced in and conveyed by said grant, the *Eastern* boundary of which passed through land occupied by *Eri Hall.* For the purpose of proving a claim of title by the plaintiffs to said land in the possession of *Hall,* lying *West* of said boundary line, they offered in evidence the record of a judgment in ejectment, recovered by them against *Hall,* in the year 1849, who, it was admitted, had been in the exclusive possession of said land, for several years prior to the commencement of that suit, holding it adversely to the plaintiffs and all other persons. The plaintiffs also offered evidence tending to prove, that prior to and down to the time when *Hall* took possession of said land, they had, for more than fifty years, possessed it, and exercised various acts of ownership thereon.

The defendant objected to the admission of such record in

evidence, on the ground that the suit was not an act of possession, nor an act accompanying possession ; and that said judgment was merely an adjudication of title to other land than the *locus in quo*, and between other parties than those in the present suit, the present defendant being neither party nor privy to that ; and that it did not appear, that *Hall* had yet been ejected from the land so recovered.

The court sustained the objection, and ruled out the record.

The defendant claimed title to the *locus in quo*, by a continued adverse possession in himself and the *Episcopal* society under whom he claimed, from the year 1790 down to the commencement of the present suit.  To avoid the defendant's claim of title on this ground, and to show that the possession of the *Episcopal* society was not adverse to that of the plaintiffs, but by licence, or under a lease from them, they offered in evidence the deposition of *J. F. Norton,* an aged man, and a member of the *Episcopal* society ; the part of which relating to this matter, was as follows: " At or near the time the fence was moved out, the *Episcopal* society, supposing that they held a lease of the ground on which the house stood, and six feet around it, from the *Congregational* society ; I suppose that the society instructed their committee to make search for the lease among their papers.  The committee came into a society meeting, and reported they could not find the lease."  There was no other evidence touching such lease, or search.

To the admission of this evidence the defendant objected ; and the court excluded it.

The jury gave a verdict for the defendant ; and the plaintiffs thereupon moved for a new trial.

*F. Parsons* and *Hooker,* in support of the motion, contended, 1. That the record of the ejectment suit and judgment against *Hall,* should have been admitted.  In the first place, it was an act of ownership—an assertion of title.  The plaintiffs were acting as owners.  Secondly, it could make no difference that they had not yet ejected *Hall.*  They had the power to do it, at any moment.  If they had done it, their suit, their judgment and the service of their execution, would be acts done by them while out of possession.  But

*[margin note:]* Hartford, August, 1850.

Southington Ecclesiastical Society *v.* Gridley.

*Hartford,*
*August,* 1850.

Southington
Ecclesiastical
Society
*v.*
Gridley.

thirdly, this record was admissible as furnishing the highest evidence of title known to the law.    *Hall* was in possession, claiming title.    The plaintiffs recovered a judgment against him for this very land.    Suppose he had given the plaintiffs a deed; would not that have been evidence ?    Yet a deed is of no more solemnity than a judgment ; and like a judgment, it binds only parties and privies.    The question was simply, where was the line between the plaintiffs and *Hall ;* it being undisputed that that line, wherever it was, was the same line that bounded the *locus in quo.*

2. That the part of *Norton's* deposition which was offered by the plaintiffs, should have been received.    The report of the committee, in society meeting, that they could not find the lease, was a declaration of a former owner against his title. It certainly implied the former existence of a lease.    The plaintiffs were entitled to this evidence, to go to the jury, for what it was worth.

*Toucey* and *R. D. Hubbard,* contra, contended, 1. That the record of the judgment against *Hall* was properly rejected.    In the first place, it was *res inter alios.*    Secondly, the subject matter was not identical.    Thirdly, it was not admissible *as a fact.*    It was utterly *irrelevant,* as it related to a different *locus.*    Fourthly, it was inadmissible to prove a claim of title ; because the plaintiffs were not in possession ; and a naked claim of title, by a party out of possession, is clearly not evidence in his favour.

2. That the extract from *Norton's* deposition, offered by the plaintiffs, was properly ruled out.    In the first place, the evidence was merely *conjectural.*    The witness stated nothing that he had any knowledge of, but merely what he *supposed.*    Secondly, parol evidence of the doings of an ecclesiastical society, if otherwise unexceptionable, is inadmissible, as they should appear of record.    *Stat.* 168. § 135.    Thirdly, the report of the committee was not evidence, unless *accepted* by the society.    Fourthly, it was irrelevant to the claim of the plaintiffs.

HINMAN, J.    The record offered in evidence by the plaintiffs, was properly excluded.    It was the record of a judgment between different parties, and in relation to a different

subject matter; and comes within none of the exceptions to the rule, excluding judgments between different parties. It was offered for the purpose of proving a claim of title by the plaintiffs to the land adjoining the *locus in quo*, as part of a larger tract claimed by them, which included the land on which the trespass was committed; and it is insisted, that it should have been received, as conducing to show an act of ownership, by the plaintiffs, to a portion of the larger tract.

*Hartford,*
August, 1850.

Southington
Ecclesiastical
Society
*v.*
Gridley.

It is obvious, in this point of view, that the judgment of the court is of no force whatever. It is only the act of the plaintiffs, in prosecuting the former suit, that gives the record the force of evidence, according to this claim. As such, no doubt it does show, that the plaintiffs claimed a right to the possession of the land occupied by *Hall;* but it shows no act of ownership. At most, then, it is the naked declaration of the plaintiffs, that they were entitled to the possession of the land occupied by *Hall.* That this declaration, or claim, was made to a lawyer, and a suit brought and prosecuted to enforce it, gives it no additional weight. It is equally liable to the suspicion of collusion; or that, it was made for the purpose of making evidence, by the party himself.

The defendant claimed title, by himself, and under the *Episcopal* society, by virtue of an adverse possession, since the year 1790. The plaintiffs claimed, that the possession of the *Episcopal* society was under a licence from them; and, therefore, not adverse. To prove this, they offered in evidence the deposition of an aged member of that society; who deposed, that on a certain occasion, " the *Episcopal* society, supposing that they held a lease of the ground on which the house stood, and six feet around it, from the *Congregational* society; I suppose that the society instructed their committee to make search for the lease among their papers. The committee came into a society meeting, and reported they could not find the lease." And the question is, whether the decision of the court, excluding this deposition, was correct. Most of the deposition,—indeed all of it, except the part which states, that the committee reported to the society meeting that they could not find the lease,—is the mere conjecture of the witness. He thought that the society supposed they held a lease of the ground; and that they instructed their committee to search for it. This was the opinion of the wit-

*Hartford,*
*August, 1850.*

Southington
Ecclesiastical
Society
*v.*
Gridley.

ness; but, upon what facts it was founded, does not appear; and it is not now claimed, that there was any error in excluding it.

But, it is said, that the report of the committee to the society meeting, was a declaration which implied, that they held under a lease. If this declaration by the committee, was the cause of any action on the part of the society, it should be shown by their votes. It could not be shown by parol. It does not, however, appear to have caused any action on the part of the society, and for that reason ought not to affect them. And, as a declaration of the committee, as agents of the society, it was not admissible; because it was not accompanied by any act. The committee were not agents of the society for the purpose of making admissions merely. *Hartford Bank* v. *Hart, 3 Day,* 493.

We are therefore satisfied there was no error in the ruling of the court; and do not advise a new trial.

In this opinion the other Judges concurred.

New trial not to be granted.